Argued and submitted October 28, 1998, reversed September 22, 1999

## JEFFERSON STATE ROCK PRODUCTS, INC.,
*Petitioner,*

*v.*

## LANE REGIONAL AIR POLLUTION AUTHORITY,
*Respondent.*

## (LRAPA No. 1106; CA A99233)

986 P2d 1224

Christopher A. Rycewicz argued the cause for petitioner. With him on the brief was Rycewicz & Chenoweth, P.C.

Jerome Lidz argued the cause for respondent. On the brief were Judith Giers, Glenn Klein, and Harrang Long Gary Rudnick P. C.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioner seeks review of a decision of the Lane Regional Air Pollution Authority (LRAPA)[1] Board of Directors upholding a $6,600 civil penalty assessed against petitioner for violations of LRAPA's asbestos abatement regulations. We reverse.

Petitioner entered into a contract with the Weyerhaeuser Company (Weyerhaeuser) to demolish several buildings covering approximately three acres at a Weyerhaeuser mill site in Cottage Grove, Oregon. From June 24 to June 26, 1995, petitioner demolished the buildings. It used heavy machinery to perform the demolition and generated approximately 30,000 cubic yards of debris. During the demolition, the demolition area was kept wet with water from a hose.

On July 10, 1995, an LRAPA investigator was visiting the site, to discuss another asbestos abatement project, when he noticed a debris pile from the demolished buildings. The investigator believed from previous discussions with Weyerhaeuser that the roofing debris from some of the demolished buildings contained asbestos. He returned to the site the next day and determined that some of the roofing debris contained friable asbestos,[2] because the debris crumbled in his hand. He obtained four samples of the roofing debris and sent them to a laboratory for analysis. The laboratory determined that sample one was nonfriable and contained five percent asbestos; sample two was nonfriable and contained 10 percent asbestos; sample three was friable and contained two percent asbestos; sample four was nonfriable and did not contain detectable asbestos.

LRAPA issued petitioner a Notice of Non-Compliance for failure to comply with its asbestos abatement regulations and then issued a Notice of Violation.[3] It imposed a

---

[1] LRAPA is a regional air quality control authority for Lane County. *See* ORS 468A.105. LRAPA has been delegated responsibility by the United States Environmental Protection Agency (EPA) to administer standards for asbestos. LRAPA Rules and Regulations (LRAPA R & R) 43-002-2A.

[2] " 'Friable asbestos material' means any asbestos-containing material that hand pressure can crumble, pulverize or reduce to powder when dry." *Former* LRAPA R & R 43-005-21 (1995); *see also* ORS 468A.700(8).

[3] LRAPA alleged violations of its regulations that required: (1) 10 days' advance notice to the agency before beginning an asbestos abatement project;

civil penalty of $9,600 and petitioner appealed. After a contested case hearing, the hearings officer affirmed the violations but reduced the penalty to $6,600. LRAPA's Board of Directors adopted the hearings officer's decision and petitioner filed this appeal.

In its sole assignment of error, petitioner asserts that LRAPA erred in concluding that its activities violated the agency's asbestos abatement regulations. Petitioner asserts that there is not substantial evidence of the "three factual predicate elements" required for finding that a violation occurred: (1) that the roofing debris contained asbestos in regulated quantities;[4] (2) that the asbestos was friable; and (3) that there was a release of asbestos fibers into the environment.

■ Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make that finding. ORS 183.482(8)(c); *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). We evaluate evidence that is inconsistent with the finding as well as evidence supporting it to determine whether substantial evidence supports the finding. *Id.*

■ Petitioner's primary argument is that there is not substantial evidence in the record to support LRAPA's finding that the roofing debris was asbestos-containing material (ACM). Petitioner acknowledges that the record includes a report prepared by the laboratory in which findings were made that some of the samples of the roofing debris included ACM of more than one percent. Petitioner argues, however, that the report does not provide substantial evidence to support LRAPA's findings that the roofing debris was ACM because the testing methods used by the laboratory did not satisfy the requirements imposed by applicable federal regulations, specifically, 40 Code of Federal Regulations chapter 1, part 763, subpart E, appendix E. The specific deficiency

---

(2) negative pressure enclosure of the abatement area prior to abatement; (3) securing asbestos-containing waste in a posted area or receptacle; and (4) an asbestos abatement contractor's license or worker certification to conduct an asbestos abatement project. *See former* LRAPA R & R 43-015-5A, 6B, 6G and 6L (1995).

[1] LRAPA regulations defined asbestos-containing material as "asbestos or any material containing at least 1% asbestos by weight, including particulate asbestos material.".*See former* LRAPA R & R 43-005-6 (1995); *see also* ORS 468A.700(5).

that petitioner points to is that the laboratory used only visual estimates to determine the amount of asbestos in the samples. Petitioner asserts that, under the regulations, once asbestos is *identified* in a sample, the laboratory is required to use more precise testing methods, specifically the "point-counting procedure"[5] to quantify the amount of asbestos present in a sample. LRAPA relies on the Code of Federal Regulations as authority that the method of analysis used by the laboratory, examination by polarized light microscope, is approved by the Environmental Protection Agency.[6]

Our review of the federal regulations, cited by both parties, demonstrates that petitioner is correct that two steps are necessary to analyze a sample. The Code of Federal Regulations appendix, 40 CFR § 763, app E, includes a description of a method of analyzing samples for the presence of asbestos. Section 1.7.2 of the appendix describes two steps that consist of identification of asbestos fibers and then quantification of the amount of asbestos present through polarized light microscopy. *See* 40 CFR § 763, app E, § 1.7.2 (1997). According to the appendix, samples are examined initially for homogeneity and preliminary fiber identification at low magnification. *Id.* at § 1.1. Quantification is then performed by a point-counting procedure or an equivalent estimation method. *Id.* at § 1.7.2.4.

The hearings officer found that the roofing material contained asbestos in amounts greater than one percent by weight, a conclusion apparently based on the laboratory report. However, it is undisputed that the laboratory only visually analyzed the four samples. There is no evidence that

---

[5] "Point counting" is a standard technique for determining the relative areas occupied by separate minerals in thin sections of rock. The technique may be used to identify and quantify asbestos in a sample. *See* 40 CFR ch 1, pt 763, subpt E, app E, § 1.1 (1995).

[6] LRAPA cites to "40 CFR Ch. 1 section 761.119, Appendix A (7-1-92 Edition)." However, as petitioner points out in its Memorandum of Additional Authority, section 761 of the Code of Federal Regulations concerns polychlorinated biphenyls. *See* 40 CFR § 761 (1992); *see also* 40 CFR § 761 (1998). Petitioner asserts that LRAPA apparently "intended to cite 40 CFR Ch. 1 Pt. 763, Subpt. F. App. A (1992)," which petitioner further asserts is identical to 40 Code of Federal Regulations chapter 1, part 763, subpart E, appendix E (1997). LRAPA does not dispute petitioner's assertion regarding the relevant federal regulatory appendix. Accordingly, we refer to that appendix for guidance.

the laboratory took the second step required by the federal regulations by using point counting or an equivalent method of quantification to determine the percentage of asbestos present.[7]

LRAPA's response to petitioner's argument regarding the necessity of quantifying a sample is that, because there is a finding in the laboratory report that sample two contained 10 percent asbestos, it was unnecessary to quantify the sample further. Essentially, LRAPA argues that sample two and the finding by visual estimate that it contained 10 percent asbestos alone provides substantial evidence to support LRAPA's findings.

We do not find LRAPA's contentions persuasive. First, although the laboratory report does indicate that point counting will be used if requested by the client when the visual estimate is less than 10 percent, LRAPA has not identified any applicable provision that states that quantification is unnecessary when there is a visual estimate of 10 percent or more. Further, as petitioner points out, the laboratory determined that sample two was nonfriable. Consequently, that evidence does not constitute substantial evidence that the roofing debris was friable ACM. We conclude that because of deficiencies in the sample analysis there is not substantial evidence in the record to support the finding that the roofing debris contained a regulated quantity of asbestos.[8]

■ Petitioner argues alternatively that, not only did LRAPA fail to prove that the roofing material contained asbestos in regulated quantities, its activities came within an exemption in LRAPA's regulations. The exemption provides:

---

[7] LRAPA does not argue that the samples could not be point counted.

[8] Petitioner also argues that there is not substantial evidence to support LRAPA's finding that the debris included ACM because there is no evidence that the percentages of asbestos shown in the laboratory report were "by weight." Under LRAPA's regulations, *former* LRAPA R & R 43-005-6 (1995), in order to constitute ACM, the material must contain at least "1% asbestos by weight." There is some question whether this argument was preserved below. In view of our holding that there is not substantial evidence to support LRAPA's findings, it is unnecessary to address this issue.

"4. Any person who conducts or provides for the conduct of an asbestos abatement project shall comply with the requirements set forth in 43-015-5 through 9A. The following asbestos abatement projects are exempt from these requirements:

"* * * * *

"B. Removal of nonfriable asbestos-containing materials that · are not shattered, crumbled, pulverized or reduced to dust until disposed of in an authorized disposal site. This exemption shall end whenever the asbestos-containing material becomes friable and releases asbestos fibers into the environment." *Former* LRAPA R & R 43-015-4 (1995).

Petitioner specifically contends that, even if the roofing debris was ACM, its activities were within the exemption, because LRAPA did not prove that the ACM became friable or that asbestos fibers were released into the environment. LRAPA argues that it proved both that the ACM became friable and that asbestos was released into the environment. It is not necessary to address the question of whether there was substantial evidence to support the finding that the asbestos became friable because, as we will explain, there is no substantial evidence to support the conclusion that the asbestos fibers were released into the environment.

Petitioner asserts that LRAPA failed to prove a release into the environment, because there is no testimony or sampling evidence of releases on June 24, 25, and 26, 1995. It further asserts that it is reasonable to infer the absence of a release, because the abatement procedures later required by LRAPA were identical to those used during demolition. The hearings officer found that petitioner's demolition activities, *e.g.*, driving over downed material, and shoveling and piling the material, were likely to make asbestos in the material friable and that once the asbestos became friable, petitioner lost the exemption under *former* LRAPA R & R 43-015-4B (1995). *Former* LRAPA R & R 43-015-4B (1995) provides that the exemption from asbestos abatement project requirements ends when ACM becomes friable *and* releases asbestos fibers into the environment. Our review of the record indicates that there is no evidence of a release of asbestos fibers into the environment. There is no evidence of soil or air

samples taken from site during the days when the demotion occurred. Further, even assuming that there is evidence that the asbestos became friable, it is not a reasonable inference that asbestos necessarily was released into the environment. The regulations themselves treat friability and a release into the environment as two separate events. Further, there is undisputed evidence in this record that procedures identical to those later required by LRAPA during the abatement for this site were used during the demolition. This fact rebuts any presumption that friable asbestos necessarily would have resulted in a release. We conclude that there is no evidence by which a reasonable person could conclude that there was a release of asbestos fibers into the environment and, accordingly, even if it is assumed that there was a regulated quantity of asbestos here, petitioner's activities came within the exemption.

In summary, there is not substantial evidence in this record to support LRAPA's findings that the roofing debris contained asbestos in a quantity sufficient to trigger the abatement requirements or that petitioner's activities caused a release of asbestos fibers into the environment. Absent such evidence, LRAPA failed to prove that petitioner's activities violated its regulations.

Reversed.